**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joey Tom Yazzie, | No. CV-20-08097-PCT-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

Plaintiff Joey Tom Yazzie applied for Relocation Assistance Benefits under the Navajo and Hopi Land Settlement Act and was denied. He now appeals the denial of benefits. Because the reason set forth in the administrative decision for denying benefits was not supported by substantial evidence, the case will be remanded to the agency for further proceedings.

**BACKGROUND**

On August 31, 2010, Yazzie applied for Relocation Assistance Benefits under the Navajo and Hopi Land Settlement Act ("Settlement Act"). In order to receive relocation benefits, Yazzie must have been a "resident" of Hopi Partitioned Land ("HPL") on December 22, 1974 and continued to be a resident of HPL when he became a "Head of Household" as those terms are defined in the governing regulations. 25 C.F.R. §§ 700.69, 700.147.

The administrative record establishes the following. In 1964, Yazzie was born in Oregon, where his father was attending school and working. (Doc. 11 at 87). After about

five years in Oregon, Yazzie returned with his family to live on HPL. (Doc. 11 at 88). Yazzie then attended both first and second grade on HPL. (Doc. 11 at 89). After second grade though, Yazzie and his family moved to Los Angeles, California, where his father had obtained a job. (Doc. 11 at 89–90). From third grade on, Yazzie attended school in California. (Doc. 11 at 92). At age 16, he obtained a California driver's license. (Doc. 11 at 102). And in 1982, he graduated from high school in California. (Doc. 11 at 92). Throughout these years, Yazzie returned to HPL for summer and holiday breaks. (*See*, *e.g.*, Doc. 11 at 91).

The summer after his high school graduation, Yazzie returned to visit his grandmother on HPL. (Doc. 11 at 92–93). But in the fall or winter of 1982, he returned to California and lived with his parents. (Doc. 11 at 94). In 1983, Yazzie began working at Chuck E. Cheese pizzeria and attending junior college in California. (Doc. 11 at 94–98). Again, that summer, he returned to HPL to visit his grandmother. (Doc. 11 at 98). Yazzie then went back to California where he obtained a temporary job with Kelly services. (Doc. 11 at 100). Yazzie returned to HPL every year until his grandmother died in 1994. (Doc. 11 at 100–01).

On June 11, 2012, Yazzie's initial application for relocation benefits was denied. In Yazzie's application, he stated that he did not know when he moved off HPL. According to Office of Navajo and Hopi Indian Relocation ("ONHIR") records, Yazzie's father left HPL in 1981. As such, ONHIR initially determined Yazzie's "move-off date" was 1981. But because Yazzie was an unemancipated minor as of 1981, ONHIR denied Yazzie benefits. It appears ONHIR reasoned Yazzie's departure in 1981 meant he left the HPL before he became a Head of Household.

On August 9, 2012, Yazzie's appealed the denial, for which a hearing was held on January 24, 2014 before an Independent Hearing Officer ("IHO"). On April 25, 2014, the appeal was denied. Contrary to the initial denial, the IHO determined Yazzie was not a legal resident of HPL on December 22, 1974 or any time thereafter. (Doc. 11-1 at 91–93). In the IHO's view, Yazzie's "living situation compels the conclusion that he was a

California resident from the time he was a little boy and he remained a California resident beyond the time he became an adult." The IHO went on to find there was insufficient evidence that Yazzie had "a legal residence on Hopi Partitioned Land at any time since the Act was passed." (Doc. 11-1 at 92). The IHO did not address the fact that Yazzie's father, who Yazzie lived with until at least 1983, had been deemed a resident of HPL through 1981. On the issue of "Head of Household," the IHO's sole finding was that Yazzie "remained dependent on his parents until the end of 1983." Ultimately, the IHO concluded "[s]ince applicant was not a legal resident of [HPL], he is not eligible for relocation benefits." (Doc. 11-1 at 93).

On April 23, 2020, Yazzie filed the complaint in this action, appealing the hearing officer's decision. The parties have filed cross-motions for summary judgment. Yazzie argues the IHO's decision was arbitrary, capricious, and is unsupported by substantial evidence.[1] While ONHIR argues the decision was supported by substantial evidence.

## LEGAL STANDARD

The Administrative Procedure Act ("APA") governs judicial review of agency decisions under the Settlement Act. *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995). A court must "review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [administrative agency's] conclusion." *California Pac. Bank v. Fed. Deposit Ins. Corp.*, 885 F.3d 560, 570 (9th Cir. 2018). A court may set aside an administrative agency's decision only if that decision was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni v. Navajo–Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1122 (9th Cir. 1989) (citing 5 U.S.C. § 706(2)(A), (E) (1982); *Walker v. NHIRC*, 728 F.2d 1276, 1278 (9th Cir. 1984)). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995).

A court "is not empowered to substitute its judgment for that of the agency."

---

[1] Yazzie also argues the denial of benefits violated ONHIR's fiduciary duty to Yazzie. While federal government does have a fiduciary relationship with recognized tribes, *United States v. Mason*, 412 U.S. 391, 398 (1973), it does not change the result of this decision.

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (citations omitted). "Where evidence is susceptible of more than one rational interpretation, it is the [IHO's] conclusion which must be upheld; and in reaching his findings, the [IHO] is entitled to draw inferences logically flowing from the evidence." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (cleaned up). If the agency "considered the relevant factors and articulated a rational connection between the facts found and the choices made," a court must affirm. *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Dep't of Agr.*, 499 F.3d 1108, 1115 (9th Cir. 2007) (quoting *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1206 (9th Cir. 2004)).

The limited scope of judicial review also means the Court may only evaluate the evidence and reasoning in the agency's decision. The Court reviews only what the agency did, "not what [it] could have done." *Shirrod v. Director, Office of Workers' Comp. Programs*, 809 F.3d 1082, 1087 n.4 (9th Cir. 2015). If an agency's proffered reasoning is insufficient, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

## ANALYSIS

The threshold inquiry is whether Yazzie was a legal resident of HPL as of December 22, 1974. If Yazzie was not a resident, his claim fails. If Yazzie was a resident, then there must be a further determination whether he remained a resident until he became a "Head of Household." The IHO's decision addressed only Yazzie's legal residence. According to the IHO, Yazzie was a legal resident of California, not HPL as of December 22, 1974 or anytime thereafter. (Doc. 11-1 at 93). That conclusion is not supported by the evidence in the administrative record. In fact, it appears to be undisputed Yazzie was a legal resident of HPL at least through 1981.

There is no evidence in the record supporting the IHO's determination that Yazzie was not a legal resident on December 22, 1974. Yazzie's father was certified for relocation

benefits in 1996. (Doc. 11-1 at 11). That certification determined his father was a legal resident of HPL until 1981. (Doc. 11 at 46). Because Yazzie was a minor at the time, ONHIR's initial determination found Yazzie was also a legal resident of HPL until 1981.[2] (Doc. 11 at 46). At the hearing, Yazzie's attorney, Lee Phillips, stated, "I believe it's not contested that Mr. Yazzie was a resident of the Mosquito Springs area up on the HPL." (Doc. 11 at 85). He explained, the issue was whether Yazzie remained a legal resident of HPL from 1982 to 1983 when Yazzie became a Head of Household. (Doc. 11 at 85). In response, the Defendant agreed. (Doc. 11 at 85). In other words, the hearing began with the parties agreeing the issue was Yazzie's status as "Head of Household," not whether Yazzie had been a resident of HPL. Defendant's post-hearing brief agreed Yazzie "was a legal resident of the HPL" as of December 22, 1974. (Doc. 11-1 at 11).

Substantial evidence does not support the IHO's finding that Yazzie did not maintain legal residence on HPL any time after December 22, 1974. Raised for the first time in a post-hearing brief, Defendant argues Yazzie's father's benefits certification only demonstrates the father was a Head of Household and legal resident on December 22, 1974. (Doc. 11-1 at 11). In other words, Defendant argues because the father qualified for benefits as a Head of Household on December 22, 1974, his legal residence thereafter was irrelevant to his certification. However, it is uncontested that ONHIR records determined Yazzie's father maintained legal residence on HPL until 1981. Two Navajo chapter resolutions recognize Yazzie's father moved off HPL to a different Navajo chapter by March 30, 1981. (Doc. 11 at 70–75). Defendant argues the language of those documents "make clear the move had already taken place, though the actual date of the move is not provided." (Doc. 11-1 at 13). Defendant is correct. The resolution dated March 30, 1981, states Yazzie's family "use (sic) to reside" on HPL land but now reside on another chapter's land. (Doc. 11 at 70). Another resolution dated April, 4, 1981, accepted Yazzie's family into the new chapter's land. While this is significant evidence to support Yazzie's legal residence on

---

[2] The initial determination denied Yazzie benefits not because he was not a legal resident but because he was not attained Head of Household status by the time he left HPL in 1981. (Doc. 11 at 46).

HPL ended in 1981, it does not support the IHO's finding that Yazzie was not a legal resident *any* time after December 22, 1974.

Moreover, the IHO's opinion is internally inconsistent. For example, IHO found both Yazzie and his father credible. (Doc. 11-1 at 90). But then found, "[t]he evidence shows otherwise" in reference to Yazzie's testimony that he was "old enough to be on his own" since graduating high school in 1982. (Doc. 11-1 at 91–92). If Yazzie was credible and supporting himself as of 1982, it is unexplained how the IHO could conclude Yazzie "remained dependent on his parents until the end of 1983." (Doc. 11-1 at 92).

Because the parties appeared to agree and the present record established Yazzie was a legal resident on HPL until at least 1981, the IHO's decision that Yazzie was never a resident, was arbitrary, capricious, and not supported by substantial evidence. Accordingly, this case shall be remanded to the agency for further proceedings.

**IT IS ORDERED** Plaintiff's motion for summary judgment (Doc. 19) is **GRANTED**.

**IT IS FURTHER ORDERED** Defendant's motion for summary judgment (Doc. 21) is **DENIED**.

**IT IS FURTHER ORDERED** Defendant's administrative decision denying Plaintiff's application for relocation benefits is **REMANDED** to the agency for further proceedings.

**IT IS FURTHER ORDERED** the Clerk of Court shall enter judgment in favor of Plaintiff.

Dated this 22nd day of September, 2021.

Honorable Roslyn O. Silver
Senior United States District Judge